## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**GUILLERMO BOADA-GONZÁLEZ,**

*Petitioner,*

v.

**UNITED STATES OF AMERICA,**

*Defendant.*

**CIVIL NO. 17-1622 (DRD)**
(Criminal Case No. 15-113-13-DRD)

## OMNIBUS OPINION AND ORDER

Pending before the Court is Petitioner, Guillermo Boada González's *Pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. See* Docket No. 1.[1] The Government timely filed its respective *Response in Opposition* thereto. *See* Docket No. 11. Approximately a year and a half after filing the *Habeas Corpus* motion, the Petitioner filed a *Motion Pursuant to Fed. R. Civ. P. 15(d) Requesting the Court to Consider Supplemental Pleadings* along with a sworn affidavit. *See* Docket No. 12. Consequently, the Petitioner filed a *Motion to Request an Evidentiary Hearing for the 28 U.S.C. § 2255 Motion* (Docket No. 18). Said request was denied. *See* Docket No. 19.[2] We explain.

Mr. Boada essentially asserts in his initial § 2255 Petition, that counsel's legal representation was ineffective as the Petitioner was abandoned by counsel, and also for failing to file a notice of appeal to challenge his conviction and sentence. Whereas, twenty (20) months

---

[1] An AO 243 Form – *Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* and a *Memorandum of Law in support included with the § 2255 Petition*. The date of filing was April 28, 2017 - *See* Docket No. 1.

[2] Said request was denied as the Court found that an evidentiary hearing was not warranted.

thereafter, the Petitioner filed within the Habeas, a *Motion Pursuant to Fed.R.Civ.P. 15(d) Requesting the Court to Consider Supplemental Pleadings. See* Docket No. 12. Therein, Mr. Boada raised new allegations of sentence disparity along with an affidavit in support of his previously raised ineffective assistance of counsel argument. *See Id.*

In turn, the Government argues that Petitioner's claim lacks merit as he failed to satisfy the necessary test to prove ineffective counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Government further alleges that Petitioner's self-serving allegations are overly general and inherently incredible since they lack specificity as to when the Petitioner purportedly asked counsel to file an appeal and because he waited almost an entire year to file his §2255 motion. *See* Docket No. 11. Finally, the Government argues that (1) Mr. Boada's conviction was pursuant to a plea agreement, (2) he received a most favorable sentence below the sentencing guidelines, and (3) he expressly waived his right to appeal his sentence provided he was sentenced in accordance with the terms and conditions set forth in the sentence recommendation of the plea agreement.

For the reasons stated herein, the Court **DENIES** the Petitioner's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (hereinafter, "*Motion to Vacate*") (Docket No. 1).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As stated in the *Government Version of Facts* as stipulated in the *Plea Agreement* and accepted by Mr. Boada, the facts surrounding the instant case are detailed as follows,

> On February 3, 2015, a Customs Air and Marine Branch (CAMB) marine patrol aircraft (MPA) detected the motor vessel (M/V) Atlantic VII, a 267 foot coastal freighter, operating with a small yola-type (hereinafter the yola) secured to its main deck off the north coast of Puerto Rico, approximately fourteen nautical

2

miles north of Puerto Rico. Law enforcement personnel on board the MPA observed the Atlantic VII slow down and, at the same time, multiple crewmembers used the ship's crane to place the yola in the water alongside the Atlantic VII. Some crewmembers boarded the yola while others lowered packages down to the vessel. It was the object of the conspiracy among all persons aboard the Atlantic VII including the Defendant, as well as others on shore, to import cocaine into the United States.

The yola then got underway and proceeded south towards Puerto Rico without navigation lights. <u>Law enforcement agents aboard U.S. Coast Guard (USCG) and CAMB vessels intercepted the yola approximately eight nautical miles north of Puerto Rico, revealing two Venezuelan nationals on board along, including the Defendant, Guillermo Boada-Gonzalez, with numerous packages. Field tests of substance within the bales tested positive for the presence of cocaine. The two subjects on board the yola were taken into custody. The final weight of the contraband was 989.4 kilograms.</u>

At first light on February 4, 2015, the U.S. Coast Guard Cutter (CGC) VALIANT sent a boarding team to the Atlantic VII, which boarded the vessel approximately eleven nautical miles north of Monito Island, Puerto Rico. <u>A total of eleven members were found on board the Atlantic VII. No legitimate cargo was found on board the vessel. Although no additional narcotics were discovered on board, "IONSCAN" swipes of multiple surfaces of the vessel.</u> The Atlantic CII and her crew were escorted by the CGC VALIANT to Ponce, Puerto Rico, where the Defendant was turned over to agents from Homeland Security Investigations (HSI) for prosecution.

Docket No. 241 at 10-11, in criminal case no. 15-113 (DRD)(Emphasis ours).

As a result, thereof, on February 11, 2015 a Grand Jury returned a Four-Count *Indictment* against the Petitioner along with twelve (12) other co-defendants. The defendants were charged for violations of Title 21 U.S.C. § 952 (hereinafter, "Count One") which consists of aiding and abetting each other and other diverse persons and importing into the United States from a place outside thereof, five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Narcotic Controlled Substance; Title 21 U.S.C. § 963 (hereinafter, "Count Two") which consists of knowingly and intentionally combining, conspiring, confederating and agreeing with each other and with other diverse persons to commit an offense defined in

Title 21, United States Code, Section 952; Title 46 U.S.C. §§ 70503(a)(l), 70504(b)(l), and 70506(a) and (b) (hereinafter, "Count Three") which consists of aiding and abetting each other and other diverse persons, knowingly and intentionally possessing with the intent to manufacture or distributing five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, on board vessels subject to the jurisdiction of the United States; and Title 46 U.S.C. §§ 70503(a)(l), 70504(b)(l), and 70506(a) and (b) (hereinafter, "Count Four") which consists of knowingly and intentionally combining, conspiring, confederating and agreeing with each other and with other diverse persons to commit an offense defined in Title 46, United States Code § 70503, that is; possessing with the intent to distributing five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controller Substance, on board vessels subject to the jurisdiction of the United States as defined in Title 46, U.S.C. § 70503(c)(1)(D) and (F)(iii).

On February 4, 2016, the Petitioner entered into a *Plea and Forfeiture Agreement* with the Government as to Count Two of the *Indictment*[3]. *See* Docket No. 247 in criminal case no. 17-15-113 (DRD). As per the *Plea Agreement*, the parties stipulated that Petitioner would be accountable for the possession of at least 150 kilograms but no less than 450 kilograms of cocaine, on board of a vessel subject to the jurisdiction of the United States. Petitioner also acknowledged that by pleading guilty for Count Two he would be subject by the Court to a penalty which may not be less than ten (10) years and not more than life, and a term of supervised release of at least five (5) years.

---

[3] Count Two charged the Petitioner with the conspiracy of knowingly and intentionally possessing with intent to distribute controlled substances, to wit, cocaine. *See supra.*

After the corresponding *Sentencing Hearing* on June 16, 2016, the Petitioner was ultimately sentenced to a term of imprisonment of ninety-seven (97) months and five (5) years of supervised release, a term of imprisonment significantly lower than the recommendation set forth and accepted by the Petitioner in the *Plea Agreement* as he received a safety valve reduction to his sentence. Judgment was entered on the same date. *See* Docket No. 367 in criminal case no. 17-1622 (DRD).  As Petitioner did not file a *Notice of Appeal*, his sentence became final and unappealable fourteen (14) days thereafter.

For the reasons articulated below, the Court **DENIES** the Petitioner's *Motion to Vacate*.

## II.    LEGAL ANALYSIS

Pursuant to 28 U.S.C. § 2255, a federal prisoner may file an *Habeas Corpus* petition to vacate, set aside, or correct his or her sentence by showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The prisoner is entitled to a prompt hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." However, "[r]elief under [§ 2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted); *see Knight v. United States*, 37 F.3d 769, 772-73 (1st Cir. 1994).

**A.      *Ineffective Assistance of Counsel Before the District Court***

Petitioner has filed a *Motion to Vacate* claiming ineffective assistance of counsel. He affirms that counsel provided ineffective assistance as he failed to appeal the conviction and sentence after petitioner had expressed to counsel his wish to appeal. He also alleges that he was deliberately abandoned by counsel. *See* Docket No. 1. To succeed on such a claim, the Petitioner holds the burden of proving that his allegations meet and satisfy the *Strickland* standard. *See Strickland v. Washington,* 466, U.S. 668 (1984). Under *Strickland*, Petitioner must prove that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland v. Washington,* 466, U.S. 668(1984)); *see Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir. 1996); *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994); *Lema*, 987 F.2d at 51; *López-Nieves v. United States*, 917 F.2d 645, 648 (1st Cir. 1990) (citing *Strickland*, 466 U.S. at 687).  Petitioner argues that he specifically asked counsel to appeal his sentence and that counsel failed to pursue the endeavor to which he was specifically requested, thus counsel's failure to appeal constitutes a constitutionally deficient performance. *See* Docket No. 1. The Court disagrees and explains.

**1)   *Strickland Test***

In the case at bar, the Petitioner filed a valid § 2255 Petition as *Strickland* also applies to representations outside of the trial setting, which would include plea bargains, sentence, and appeal. *See Missouri v. Frye*, 132 S. Ct. 1399, 1408-10, 182 L. Ed. 2d 379 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Bonneau v. United States*, 961 F.2d 17, 20-22 (1st Cir. 1992); *United States v. Tajeddini*, 945 F.2d 458, 468-69

(1st Cir. 1991)(abrogated on other grounds by *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 1036, 145 L. Ed. 2d 985, 997(2000)); cf. *Panzardi-Álvarez v. United States*, 879 F.2d 975, 982 (1st Cir. 1989); *López-Torres v. United States*, 876 F.2d 4, 5 (1st Cir. 1989) (abrogated on other grounds by *Bonneau v. United States*, 961 F.2d 17 (1st Cir. 1992)).

To fulfill the first standard under *Strickland*, as stated before, the petition must prove that counsel's performance fell below an objective standard of reasonableness. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Notwithstanding, Circuit Courts have determined that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. In examining whether the Petitioner's representation was below the objective standard reasonableness Courts should always make a determination as to whether Petitioner received from counsel the constitutional right to an adequate representation. "In all criminal prosecutions, the accused shall enjoy the [right] [. . .]  to have the Assistance of Counsel for his defen[s]e." U.S. Const. amend VI. As to the Petitioner's case, he was charged in four (4) counts, however, he was offered a plea deal in which he pleaded guilty for only one (1) count (Count Two). The remaining counts were dismissed. Petitioner would have faced a much more severe sentence had he gone to trial. Further, the *Plea Agreement* which was initialized and signed by the Petitioner, specifically stipulated that, "Defendant represents to the Court to be satisfied with counsel, Alex Omar Rosa-Ambert, Esq., and indicates the counsel has rendered effective legal assistance." *See* Docket 247 for *Plea and Forfeiture Agreement* at 6 in Criminal

Case No. 17-1622 (DRD). The contents of the plea deal were explained and translated to Mr.

Boada in his native language, Spanish, by counsel. This can be corroborated in Petitioner's change

of plea hearing where he stated the following:

> THE COURT: So I go now then to Mr. Guillermo and ask him. Your lawyer has just
> made the representation that he has fully translated the plea agreement to you
> and he has fully explained the same as to the consequences thereof.
> DEFENDANT BOADA-GONZALEZ: Yes, sir.
> THE COURT: Is he making a correct representation to the Court?
> DEFENDANT BOADA-GONZALEZ: Yes.[4]

Additionally, during the Change of Plea Hearing Mr. Boada stated that he had met and discussed

the potential consequences of making a plea. When asked how many times his lawyer had met

with him, he indicated that they had met eight (8) times as demonstrated by the transcript extract

below:

> THE COURT: Boada-Gonzalez. How many times have you met with -- have you
> discussed with your attorney the potential consequences of
> making a plea? That is a yes or a no.
> DEFENDANT BOADA-GONZALEZ: Yes, sir.
> THE COURT: And how many times have you met with him
> in order to discuss the case in general and the consequences
> of making a plea?
> DEFENDANT BOADA-GONZALEZ: About eight times.
> THE COURT: Mr. Rivera -- excuse me, counsel.
> MR. ROSA: Yes.
> THE COURT: Have you -- do you agree with him that
> you met with him eight times?
> MR. ROSA: Your Honor, I cannot state as to certain
> how many times I advised him. But I do tend to go to MDC to
> visit them at least once a month. So if the case started in
> March, that would be close to ten times maybe.
> THE COURT: Thank you.

---

[4] See Docket 418 at 28 for more transcript detail regarding the *Change of Plea Hearing Transcript*.

Mr. Boada also recognized his knowledge and consent to the terms of the plea deal and the terms

of the safety valve offered to him.

> THE COURT: All right. So, finally, we go to
> Mr. Guillermo Boada-Gonzalez. Sir, you are facing a sentence
> of 135 to 168 months. If you make the safety valve you go
> down to 108 to 135. Has anyone made any other or different
> promise or assurance to you of any kind in an effort to induce
> you to enter into a plea in this case?
> DEFENDANT BOADA-GONZALEZ: No, sir.
> THE COURT: Sir, have you been threatened by any
> co-defendant? Any family member? Any government employee?
> DEFENDANT BOADA-GONZALEZ: No, sir.
> THE COURT: Or your lawyer to enter that plea?
> DEFENDANT BOADA-GONZALEZ: No.
> THE COURT: To enter into the plea?
> DEFENDANT BOADA-GONZALEZ: No, sir.[5]

As stated by Mr. Boada, he was aware of the arrangements and representations that counsel was

making on his behalf. Further, he did not express any discontent with counsel's performance or

any information that might make the Court think that Petitioner did not understand or was in

disagreement with the decisions made and the consequences of these decisions. "Judicial

scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney

performance requires that every effort be made to eliminate the distorting effects of hindsight,

to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct

from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. 668, 671, 104 S. Ct.

2052, 2056, 80 L. Ed. 2d 674, 683 (1984).   A close analysis as to the statements made by the

Petitioner during his Change of Plea Hearing and the statements made by counsel during both

---

[5] *See* Docket for 418 for *Change of Plea Hearing Transcript* at 47-48 in Criminal Case No. 15-113 (DRD).

the Change of Plea and the Sentencing Hearings demonstrate that counsel's representation was reasonable, thus, the first *Strickland* standard as to an error of counsel was not fulfilled.[6]

As to the second *Strickland* standard, Petitioner needed to prove that if counsel had not committed the alleged error, there is a reasonable probability that the result of the proceedings would have been different. In the instant case, Petitioner was initially facing a possible sentence of ten (10) years to life. After entering the plea agreement, Mr. Boada's sentence was reduced to ninety-seven (97) months as part of a safety valve exception. Thus, the Court in a deviation way below the lowest end of the sentencing guideline after the Petitioner signed the plea agreement, sentenced the Petitioner to thirty-eight (38) months less than the agreed upon sentence.[7] This amounts to a reduction of more than three (3) years of conviction time compared to the sentencing time that the probation officer and the sentencing guidelines had recommended based on Petitioner's adjusted offense level. Hence, in order to prevail, Mr. Boada needed to prove that if counsel would have appealed his sentence, the result of the proceedings would have been different. Considering that the Court sentenced Mr. Boada below the guideline agreed upon in the *Plea Agreement*, the Court cannot agree that the second *Strickland* standard has been met. Therefore, the Petitioner failed to comply with the *Strickland* test.

### 2) Counsel's failure to file a Notice of Appeal and Alleged Abandonment

Petitioner argues that he specifically requested counsel to file a notice of appeal, yet he was left patiently waiting for counsel to contact him as to his appeal and ultimately, Petitioner

---

[6] *See* Docket 417 for *Sentencing Hearing Transcript* in Criminal Case No. 15-113 (DRD).
[7] The Court notes that after taking the safety valve, the minimum possible amount of sentence was reduced from 135 months to 108 months, notwithstanding, the Petitioner was sentenced significantly below that term.

was abandoned by counsel. He alleges that he received insufficient assistance of counsel and therefore his *Motion to Vacate* should be granted. The Court disagrees and briefly explains.

In *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000), the Supreme Court held that "… counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe* provided the rules in evaluation of an ineffective assistance of counsel based on counsel's failure to file an appeal.

However, the analysis that the Court must follow to determine the veracity of the alleged failure of counsel to file an appeal must also take into the account the particular circumstances of the case at hand. "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. at 688.  The Petitioner had pleaded guilty to Count Two of the *Indictment* by entering a *Plea Agreement* and had also provided all the information that he knew as to the crime in a safety valve in order to allow a sentence reduction. A waiver of appeal was also signed by the Petitioner. *See* Docket 247 for *Plea and Forfeiture Agreement* and Docket for 418 in Criminal Case No. 15-113 (DRD). As stated in *Garza v. Idaho*, a waiver of appeal signed by the defendant, nonetheless, does not justify counsel's decision to not appeal. "While we do not address what constitutes a defendant's breach of an appeal waiver or any responsibility counsel may have to discuss the potential consequences of such a breach, it should be clear from the foregoing that simply filing a notice of appeal does not necessarily breach a plea agreement, given the possibility that the defendant will end up raising claims beyond the waiver's scope." *Garza v. Idaho*, 139 S. Ct. 738, 746, 203 L.

Ed. 2d 77, 88 (2019) (Emphasis ours). It is thus necessary to understand that even though a plea

agreement and a waiver of appeal do not constitute an excuse for counsel's decision not to file

an appeal, it is considered in the moment of counsel's analysis and strategy. The Supreme Court

has stated the following:

> Although not determinative, a highly relevant factor in this inquiry will be whether
> the conviction follows a trial or a guilty plea, both because a guilty plea reduces
> the scope of potentially appealable issues and because such a plea may indicate
> that the defendant seeks an end to judicial proceedings. Even in cases when the
> defendant pleads guilty, the court must consider such factors as whether the
> defendant received the sentence bargained for as part of the plea and whether
> the plea expressly reserved or waived some or all appeal rights. Only by
> considering all relevant factors in a given case can a court properly determine
> whether a rational defendant would have desired an appeal or that the particular
> defendant sufficiently demonstrated to counsel an interest in an appeal.

*Flores-Ortega*, 528 U.S. at 480. (Emphasis ours). Counsel must identify the best outcome for the

Defendant taking into consideration the Defendant's charges, criminal history, agreements with

the Government and the Court's final decision as to the Defendant's conviction sentence. In

Petitioner's *Change of Plea Hearing*, the Court specifically advised Mr. Boada as to the sentencing

guidelines that applied specifically to him and as to the inconvenience of appealing a sentence

that was the minimum of the applicable standard guideline or below that minimum. Mr. Boada

agreed.

> THE COURT: Then we go to defendant Guillermo
> Boada-Gonzalez.
> Sir, in your case the Court has the option of
> sentencing you to 135 to 168 months. And if you make the
> safety valve, 102 to 135. If you don't make the safety valve
> and the Court sentences you between --
> In this case it's the minimum; right, Mr. Rosa?
> MR. ROSA: Yes, sir.
> THE COURT: If the Court sentences you to 135, you
> cannot appeal. Do you understand that?
> DEFENDANT BOADA-GONZALEZ: Yes, sir.

> THE COURT: And if you make the safety valve, if the
> Court sentences you to 102, do you understand that, you cannot
> appeal? To 102 months. If you make the safety valve and the
> Court sentences you to 102, you cannot appeal, sir.
> MR. ROSA: 108, sir.
> THE COURT: Is it 108?
> MR. ROSA: Yes, sir.
> THE COURT: If the Court sentences you to 108, do
> you understand that you cannot appeal?
> DEFENDANT BOADA-GONZALEZ: Yes.
> THE COURT: And, of course, if I sentence you to
> less, you're not going to appeal. Do you understand that?
> DEFENDANT BOADA-GONZALEZ: Yes, sir.
> THE COURT: All right. Very well.[8]

Furthermore, the *Plea Agreement,* which was initialized and signed by the Petitioner, specifically

stipulated that,

> Defendant knowingly and voluntarily waives the right to appeal the judgement
> and sentence in this case, provided that Defendant is sentenced in accordance
> with the terms and conditions set forth in the Sentence Recommendation
> provisions of this Plea Agreement. The United states and Defendant agree that no
> further adjustments or departures maybe sought by either party and that any
> request for an adjustment or departure will be considered a material breach of
> this plea agreement. [9] (Emphasis ours).

As previously stated, Mr. Boada was conscious of the consequences of taking the plea deal and

signing the waiver of appeal. During the *Change of Plea Hearing*, Mr. Boada agreed to the terms

of the plea as follows,

> THE COURT: All of you, do you understand that if
> your plea is accepted you will be adjudged guilty of that
> offense and you may not withdraw the plea agreement?
> [. . .]
> THE COURT: And Mr. Guillermo Boada-Gonzalez.
> DEFENDANT BOADA-GONZALEZ: Yes, sir.[10]

---

[8] *See* Docket 418 for *Change of Plea Hearing Transcript* at 56-57 in Criminal Case No. 15-113 (DRD)(Emphasis ours).
[9] *See* Docket 247 for *Plea and Forfeiture Agreement* at 6 in Criminal Case No. 15-113 (DRD).
[10] *See* Docket 418 for *Change of Plea Hearing Transcript* at 48-49 in Criminal Case No. 15-113 (DRD)(Emphasis ours).

Moreover, "[w]hen mulling whether a miscarriage of justice is in prospect, we [the First Circuit] consider, among other things, the clarity of the alleged error, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result." *United States v. Gil-Quezada*, 445 F.3d 33, 37 (1st Cir. 2006).

With respect to Petitioner's allegation that he was abandoned by counsel, he argues that, "Gonzalez now submit[s] this § 2255 motion timely, based on counsel's deliberate abandonment and clear failure to act [on] Gonzalez['s] wish and request to appeal." *See* Docket 1 at 2-3. Additionally, Petitioner alleges that "[c]ounsel inexplicably failed to challenge petitioner's 97 months sentence and conviction, and counsel instead, deliberately abandoned González." Petitioner does not substantiate these self-serving allegations with any details or records that he was indeed abandoned by counsel. The Court finds that there is no specificity as to his claims.

Accordingly, Petitioner's allegation of ineffective assistance of counsel for failing to file a notice of appeal and allegedly abandoning petitioner is unpersuasive and meritless and hereby **DENIED**.

**B.      *Supplemental Pleadings and Sentence Disparity Allegation***

On December 27, 2018, the Petitioner filed a *Motion Pursuant to Fed. R. Civ. P. 15(d) Requesting the Court to Consider Supplemental Pleadings* along with a sworn affidavit. *See* Docket No. 12. Therein, Mr. Boada attempted to include new allegations of sentence disparity that were not included in the initial *Motion to Vacate* under § 2255 filed on April 28, 2017. Petitioner claims that some of the sentences received by his co-defendants were lower than his own sentence. To that end, he gave examples as to co-defendants who received three and a half years, five years and three months, eight years and one month and nine years of sentence. *See Id.* According to

the Petitioner, some of the co-defendants that received lesser sentences, unlike him, had previous drug charges. Thus, the "movant respectfully submits that he has suffered an unwarranted disparity in his sentence." *See* Docket 12 at 3. Mr. Boada sought that the supplemental pleadings be added to his original allegations of ineffective assistance of counsel. In the affidavit that accompanies his motion, Mr. Boada asserts the following facts:

> I saw my lawyer approximately four months prior to my sentencing. He told me that I would have to wait until my codefendants pled guilty because this would be better for me to make a plea agreement with the prosecutor. He said that if they pled guilty, he could possibly make a plea agreement for me for about six years.
>
> Within the following four months, all of my codefendants pled guilty. Shortly thereafter, I was summoned to court. On that very day, my lawyer showed me a plea bargain of nine years and said that the prosecutor was not interested in my case anymore and that was my best offer. Take it or leave it or go to trial. Therefore, I signed the plea agreement of nine years. At this time, I asked my lawyer why I was receiving such a harsh sentence when I was only a mariner, not a leader of this organization or the captain of the ship. He did not respond, except to say that the prosecutor repeated that the nine-year plea was the end of the matter.
>
> On June 16, 2016, after my lawyer told the court about my health condition, I was sentenced to eight years and one month in federal prison.
>
> After I was sentenced, I told my attorney that I wanted to talk with him because I wanted him to appeal my sentence. He said that he will come to MDC Guaynabo the following day to visit me but he never came and I never heard from him again. Two days later, I was transferred to FDC Miami.[11]

The Court acknowledges that Mr. Boada provided a sworn affidavit in support of his initial § 2255 Petition with his supplemental pleadings. It is further recognized that the sworn affidavit relates back to the § 2255 Petition filed on May 11, 2017 (Docket No. 1) as to the ineffective assistance of counsel claim, pursuant to Fed. R. Civ. P. 15[12]. However, the Court cannot find any

---

[11] See Docket 12 for *Sworn Affidavit of Guillermo Boada-Gonzalez* at 1-3.

[12] Rule 15(c) of Civil Procedure provides in its pertinent part that, "[a]n amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . ."

details or support of the Petitioner's allegations. These self-serving allegations do not provide specific dates, phone records, letters or anything that could be used as evidence of the fact that counsel provided insufficient assistance of counsel. For these allegations to be considered and examined closely it is necessary for the Petitioner to provide factual and specific evidence. The latest precedent in this type of situation is *Garza v. Idaho*, 139 S. Ct. 738 (2019). "Shortly after sentencing, Garza told his trial counsel that he wished to appeal. In the days that followed, he would later attest, Garza 'continuously reminded' his attorney of this directive 'via phone calls and letters,' and Garza's trial counsel acknowledged in his own affidavit that Garza had 'told me he wanted to appeal the sentence(s) of the court[.]' Garza's trial counsel, however, did not file a notice of appeal. Instead, counsel 'informed Mr. Garza that an appeal was problematic because he waived his right to appeal.'" *Ibid*. "The period of time for Garza's appeal to be preserved came and went with no notice having been filed on Garza's behalf." *Garza v. Idaho*, 139 S. Ct. 738, 743, 203 L. Ed. 2d 77 (2019).

As to the Petitioner's sentence disparity allegations, the Court need not to address them further. First, because as previously mentioned, the Petitioner was afforded a sentence significantly below the minimum sentencing guideline. Second, although it was agreed with the Government that "no further adjustments or departments [could] be sought by either party and that any request by Defendant for an adjustment or departure [would] be considered a material breach of [the] plea agreement" a safety valve reduction was afforded resulting in a reduction of sentence of thirty-eight (38) months. *See* Docket No. 367 in Related Criminal Case No. 15-113 (DRD). Third, and most critical, because the sentence of each of the defendants depended on several factors, including whether a finding was made that the defendant had a "minor role"

participation in the scheme subject of the crime, which could result in an additional reduction of two (2) points of offense level, and no such finding was made as to Mr. Boada's plea agreement. Thus, a further reduction in sentencing was not warranted.

Lastly, the Petitioner's supplemental sentence disparity request is untimely. Petitioner's *Motion Under 28 U.S.C. § 2255* was timely filed on May 11, 2017 (Docket No. 1) within the one-year statute of limitations from the date in which the judgment of conviction became final, that is 14 days after judgment if Petitioner does not file an appeal. *See* 28 U.S.C. § 2255 (f)(1). However, the *Motion Pursuant to Fed. R. Civ. P. 15(d) Requesting the Court to Consider Supplemental Pleadings* [Supplemental § 2255 Petition] along with the sworn affidavit was filed **twenty (20) months thereafter**[13], submitting the supplemental motion under § 2255 for sentence disparity, that is, on December 27, 2018 (Docket No. 12).

The Court finds that Mr. Boada's new claims do not relate back[14] to his original § 2255 Petition as the new allegation does not arise out of the same conduct, transaction or occurrence set forth in the original Petition. The original § 2255 Petition raises an ineffective assistance of counsel claim for failure to file a notice of appeal. The Supplemental § 2255 motion instead raises a sentence disparity allegation for the first time 20 months after the filing of the original Petition.

---

[13] The supplemental pleadings were filed on December 27, 2018, that is, 19 months upon the expiration of the one (1) year statute of limitation to file a § 2255 Petition.

[14] "Federal Rule of Civil Procedure 15 governs amendments to habeas petitions in a § 2255 proceeding. *See*, e.g., *United States v. Duffus*, 174 F.3d 333, 336 (3d Cir.1999); *see also United States v. Hicks*, 283 F.3d 380, 386 (D.C.Cir.2002), thereby permitting otherwise untimely pleading amendments to "relate back" to the date of the timely-filed original pleading provided the claim asserted in the amended plea "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2)(emphasis added). However, in the habeas corpus context, the Rule 15 "relation back" provision is to be strictly construed, in light of " 'Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them].' " *Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562, 2570, 162 L.Ed.2d 582 (2005) (citation omitted); *see United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir.2000) (noting that an overly broad interpretation of the Rule 15 term "occurrence" in the context of habeas proceedings "would be tantamount to judicial rescission of AEDPA's statute of limitations period"). *United States v. Ciampi*, 419 F.3d 20, 23–24 (1st Cir. 2005)

Most critical, the Petitioner had the burden of showing that some extraordinary circumstance stood in his way, and prevented a timely filing, yet no such reason was proffered. Absent an applicable exception, petitions filed outside that year are untimely. *See Lattimore v. Dubais*, 311 F.3d 46 (1st Cir. 2002); *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). Thus, the Court finds that the Petitioner failed to meet the stringent threshold set forth in *Ramos-Martínez v. United States*, 638 F.3d 315, 322 (1st Cir. 2011)(holding that "one-year limitations period [in §2255 cases] is subject to equitable tolling in appropriate instances."). No equitable tolling was made by the Petitioner as to the allegation of sentence disparity that was submitted 19 months upon the expiration of the one-year statute of limitation.

In the motion for supplemental pleadings, the Petitioner further requests the Court to "grant an evidentiary hearing to resolve the issue of the 'fail[ure] [of Movant's lawyer] to appeal the conviction' and the failure of Movant's attorney to argue the disparity between Movant's sentence and those of his codefendants with prior histories of illegal drug-trafficking[.]" *See* Docket 12 at 6. The Court deems unnecessary to hold an Evidentiary Hearing as to Petitioner's request or lack thereof of a request to file a Notice of Appeal. The ultimate result would have remained unaltered, and the sentence disparity allegation is not only untimely but meritless, given the fact that Mr. Boada did not receive a "minor role" participation reduction as part of his individual Plea Agreement. More importantly, there is a presumption that the legal representation of counsel was reasonable and effective.

Thus, the Petitioner's *Motion Pursuant to Fed. R. Civ. P. 15(d) Requesting the Court to Consider Supplemental Pleadings* is hereby **DENIED**.

### III.    CONCLUSION

For the reasons elucidated above, the Court determines that Petitioner's *Pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.* (Docket No. 1) and *Motion Pursuant to Fed. R. Civ. P. 15(d) Requesting the Court to Consider Supplemental Pleadings* are hereby **DENIED**. Judgment of dismissal is to be entered accordingly.

It is further ordered that no certificate of appealability be issued in the event that Petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional or statutory right within the meaning of 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of November, 2020.

*S/ Daniel R. Domínguez*
Daniel R. Domínguez
U.S. District Judge